# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,
    Plaintiff,

vs.                                                        No. 20-mj-01328

JORGE ALCORTA-AMBRIZ,
    Defendant.

## ORDER DENYING DEFENDANT'S DETENTION APPEAL

Defendant Jorge Alcorta-Ambriz (Defendant) has appealed an Order of Detention[1] entered on August 11, 2020. Defendant was charged with Conspiracy to Transport Illegal Aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I). (Doc. 1.) At his initial appearance, Defendant objected to having a detention hearing, arguing that the government had not shown he was a "serious risk of flight" pursuant to 18 U.S.C. § 3142(f)(2). The magistrate judge overruled the objection. At the detention hearing, Defendant then argued that detention was not warranted under either § 3142(f)(1) or (2). Ultimately, Defendant advances two arguments in support of his contention that the detention order should be reversed. First, he argues that the magistrate judge lacked an adequate basis to hold an initial detention hearing under 18 U.S.C. § 3145(f). Second, he argues that even if review by the magistrate judge was appropriate, the court erred when it determined that Defendant should be detained under 18 U.S.C. § 3142. For reasons explained below, the Court denies the appeal and orders that Defendant remain in detention pending resolution of the charges against him.

---

[1] On September 17, 2020, the Court held a video conference hearing on the Appeal. Rachel Feuerhammer represented the United States. Rachel Nathanson represented Defendant. Pretrial Services Officer George Herrera appeared by video as well.

1

## I. Background

The Criminal Complaint charges Defendant with Conspiracy to Transport Illegal Aliens under 8 U.S.C. § 1324(a)(1)(A)(v)(I). (Doc. 1.) The Criminal Complaint states that at about 6:30 a.m. on July 24, 2020, Border Patrol "observed three individuals jumping over the rock . . . behind the 'Don Cucos' Restaurant . . . [in Sunland Park, New Mexico]." (*Id.* at 1.) Border Patrol agents responded and encountered Defendant "standing in front of a 2007 Chevrolet Trail Blazer with the hood up as though he was experiencing vehicle trouble." (*Id.*) The agents searched the area for the fleeing individuals and asked Defendant if he had seen anyone. (*Id.* at 2.) He responded in the negative. After Defendant assisted the officers in their search, they again asked him if he had seen anyone. (*Id.*) Once again, Defendant responded that he had not. The officers circled back around Defendant's vehicle, looked inside a half-opened window, and saw three individuals in the back seat. (*Id.*) All three passengers admitted to being Mexican citizens who had illegally entered the United States. (*Id.*) After their arrest, in a post-Miranda statement, Defendant admitted that his niece had approached him multiple times to transport illegal aliens, but he had declined. Defendant stated that on July 24, 2020, his niece offered him $600 to transport three illegal aliens, and he accepted because "he was desperate for money due to the whole COVID-19 pandemic . . . ." (*Id.*) Defendant was given the phone number to one of the illegal aliens to arrange the pickup. When he arrived at Sunland Park, he contacted the illegal aliens and told them to look for his vehicle with the hood up. Not too long thereafter, the illegal aliens ran to Defendant's car and entered the back seat. Border Patrol arrived immediately thereafter. (*Id.*)

At the initial appearance, the government asked the magistrate judge to detain the Defendant pending resolution of the charge. Defendant opposed the request. (Doc. 14 at 2.) The

magistrate judge found that the "charge and the facts contained in the criminal complaint indicate that, as a general matter, there is a serious risk of flight" and merited a detention hearing. (*Id* at 6.) At the detention hearing, Defendant renewed his objection because the government "presented zero evidence that [he] is a serious risk of flight." (Doc. 14 at 4.) The Court overruled the objection but continued the hearing because it wanted Pretrial Services to "investigate the circumstances surrounding Defendants probation/parole revocation to determine whether the Court could fashion conditions of release." (Doc. 25 at 4 (citing Doc. 15 at 13).) Pretrial Services filed an Amended Pretrial Services Report on July 31, 2020, maintaining its previous recommendation of detention.[2] (Doc. 5). At the August 5, 2020 detention hearing, the government again asked the Court for Defendant to be detained pending resolution of the charge and Defendant opposed, arguing that detention was not warranted under either § 3142(f)(1) or (2). (*See* Doc. 16.) The magistrate judge noted that his primary concern, in looking at the Amended Pretrial Services Report, was Defendant's risk of danger to the community, but he also found that Defendant posed a serious risk of flight. (*Id.* at 2, 9.) The Court concluded "that the nature of the crime and the facts in the criminal complaint are sufficient to justify a detention determination under 3142(f)(2)." (*Id.* at 9.)

On August 11, 2020, the Court issued an Order of Detention and an accompanying written explanation. (Docs. 12; 12-1.) In his explanation, the magistrate judge detailed why both the

---

[2] The Pretrial Services Officer indicates in the report that Defendant was born in El Paso, Texas and has a common-law wife. Though Defendant has no children of his own, he stated that he helped raise his common-law wife's children. (*See* Doc. 5 at 2.) The PSR notes that Defendant was employed before his arrest. (*Id.*) The Pretrial Services Officer also indicates that Defendant is a registered sex offender and has a criminal history, which includes a 2001 conviction of Criminal Sexual Penetration of a Child. The PSR states that Defendant's six-year-old niece accused him of raping her several times over the course of a year. (*Id.* at 5.) Defendant also violated his parole in 2015. The PSR states, "[a]ccording to Probation and Parole in Las Cruces, New Mexico, the defendant's supervision was revoked [because] he had contact with a child that was under the age 18; used alcohol; and was found to be playing online games with children." (*Id.* at 6.) "The defendant was not charged with new crimes; however, his conditions were revoked for having contact with young children." (*Id.* at 7.) Upon revocation, he was incarcerated. The Pretrial Services Officer recommended that the Court detain Defendant because he posed a risk of nonappearance and a risk of danger to the community. (*Id.* at 3.)

hearing and detention were merited. First, he explained that an initial detention hearing was warranted because Defendant was determined to be a serious flight risk. He based this determination on the following facts:

> the charged offense involved a conspiracy with a human smuggling operation based in a foreign country, the charged offense occurred in the immediate proximity to the international border with Mexico, the individuals with whom Defendant was arrested were citizens of a foreign country illegally present in the United States, and Defendant attempted to deceive the Border Patrol agent during the course of the agent's investigation of the illegal entry of the individuals Defendant allegedly intended to transport.

(Doc. 12-1 at 1–2.) Next, the Court disagreed that Defendant's detention could not be based on dangerousness when the hearing was grounded upon serious risk of flight. (*See id.* at 2.) The magistrate judge came to this determination by looking at the plain language of the statute and noted, "[n]owhere in the commands of 3142(e) or 3142(g) does the statute even hint that the considerations mandated for the detention hearing are dependent upon the 3142(f) category which initially authorized the hearing." (*Id.*)

## II. Legal Standard

"The standard of review for the district court's review of a magistrate judge's detention or release order under § 3145(a) is de novo." *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003) (citation omitted). The Bail Reform Act requires release of a defendant prior to trial unless a judicial officer determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety or any other person or the community." 18 U.S.C. § 3142(b). A judicial officer can hold a detention hearing if a defendant has been charged with an offense enumerated in § 3142(f)(1) or the defendant falls into one of the § 3142(f)(2) categories. Under § 3142(f)(2) there are two possible thresholds for which a detention hearing can be held: "a serious risk that such person will flee or . . . a serious risk that such person will obstruct or attempt

to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror." *United States v. Arias*, No. CR 20-1265-001 KG, 2020 WL 3639746, at *3 (D.N.M. July 6, 2020) (quoting *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017)). "If either of those two situations exist, the court must then hold a hearing to determine whether conditions exist 'that will reasonably assure' the defendant's appearance as 'required and the safety of any other person and the community.'" *Id.* (quoting *Cisneros*, 328 F.3d at 617). "The hearing [must] be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the government, seeks a continuance." 18 U.S.C. § 3142(f)(2). "During a continuance, [the defendant] shall be detained . . . ." *Id.*

"At a detention hearing, the United States bears the burden of proving 'risk of flight by a preponderance of the evidence, . . . and it must prove dangerousness to any other person or to the community by clear and convincing evidence.'" *Arias*, 2020 WL 3639746, at *3 (quoting *Cisneros*, 328 F.3d at 616). Section 3142(g) provides several factors for the court to consider when deciding whether to release or detain a defendant pending trial. They include:

> **(1)** The nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;
> **(2)** the weight of the evidence against the person;
> **(3)** the history and characteristics of the person, including—
> > **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

**III.   Analysis**

   **A. Detainment at the initial appearance requires only a showing that the defendant's risk of flight is a possible, yet dangerous, consequence.**

Defendant argues that a detention hearing was not authorized because there was insufficient evidence that he would flee. (Doc. 17 at 12.) Defendant goes on to contend that the government must "demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual."[3] (*Id*. at 13 n.3.) This argument flies in the face of § 3142's plain language: Congress did not use the phrase "extreme and unusual," only the word "serious." *Arias*, 2020 WL 3639746, at *4; *see also United States v. Gonzales*, 456 F.3d 1178, 1182 (10th Cir. 2006) ("When a statute does not specifically define a term, [courts] construe the term in accord with its ordinary or natural meaning.") (citation omitted); *United States v. Burkholder*, 816 F.3d 607, 614 (10th Cir. 2016) ("As with all statutory interpretation cases, we begin with the language of the statute") (quotation omitted). The Court is persuaded that, as used in § 1342, the term "serious" has a much narrower construction than that argued by Defendant.

"Serious" can be defined as "having important or dangerous possible consequences." *Serious*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/serious (last visited Sept. 18, 2020); *see also Serious*, Oxford English Dictionary, https://www.lexico.com/en/definition/serious (last visited Sept. 18, 2020) (defining serious as "[s]ignificant or worrying because of possible danger or risk; not slight or negligible"). Therefore,

---

[3] Defendant states, "[t]he legislative history of the Bail Reform Act of 1984 makes clear that to minimize the possibility of a constitutional challenge, the drafters aimed toward a narrowly-drafted statute with the pretrial detention provision addressed to the danger from a small but identifiable group of particularly dangerous defendants." (Doc. 17 at 18 (quoting *United States v. Himler*, 797 F.2d 156, 160 (3d Cir. 1986)) (quotation marks omitted).) Defendant concluded that "the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial." (*Id.* (quoting *Himler*, 797 F.2d at 160).)

if one's risk of flight is to be "serious," it need only present "dangerous possible consequences." The Court emphasizes the word "possible." The defendant's flight risk need only be possibly dangerous. Per the dictionary definition, the meaning of "serious" does not rise to the level of "extreme and unusual." *See Arias*, 2020 WL 3639746, at *4.

Understanding that a magistrate judge need only determine that a defendant poses a "possible," yet dangerous, risk of flight, the Court must now evaluate whether the magistrate judge abided by this standard when ordering the detention hearing. It must be noted, the magistrate judge has only limited information available at the initial appearance. In this case, the limited information came from the criminal complaint which states that Defendant was charged with conspiracy to transport undocumented aliens, the offense occurred in the immediate vicinity of the international border with Mexico, Defendant drove a Chevrolet Trail Blazer containing multiple undocumented aliens, and Defendant attempted to deceive the Border Patrol agents twice during the course of the agent's investigation. (Doc. 5.) The magistrate judge also disclosed to Defendant at the initial appearance that he faced up to ten years in prison for the offense. (*See* Doc. 14 at 5.) Considering the facts of the complaint, coupled with the nature of the charge, the proximity to the border, and the potential penalties, the magistrate judge reasonably concluded that Defendant was a serious flight risk. (*Id.* at 6.) The Court affirms the magistrate judge's determination that a detention hearing was warranted.[4]

### B. The plain language of § 3142 states that both flight risk and danger are foundations for detention after a hearing is held.

The Court turns to Defendant's next argument: if the basis for holding a detention hearing

---

[4] Defendant argues that the magistrate judge applied a categorical presumption of risk of flight to him. The Court is not persuaded. The magistrate judge's Order considered the specific facts of the case, including that "defendant attempted to deceive the Border Patrol agent during . . . investigation of the illegal entry of the individuals allegedly intended to transport. (Doc. 12-1 at 2.)

7

is risk of flight under 18 U.S.C. § 3142(f), then the basis for detention cannot be on any grounds other than risk of flight. Put differently, Defendant argues that even if the court found by clear and convincing evidence that no conditions reasonably assured the safety of others, detention was impermissible because the court determined the basis for a detention hearing on risk of flight. For the following reasons, the Court holds that Defendants argument runs afoul of the plain meaning of the statute.

The statutory and linguistic context of the statute supports courts applying a twofold test to evaluate whether detention is appropriate. The BRA's detention provision in subsection (e) reads:

> If, after a hearing pursuant to the provisions of subsection (f) of this section, the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required **and** the safety of **any** other person and the community, such judicial officer shall order the detention of the person before trial.

18 U.S.C. § 3142(e) (emphasis added). As the government rightly points out, the conjunction "and" being placed between the consideration concerning flight risk and the consideration concerning safety to the community means both factors should be contemplated after a detention hearing. *See Pueblo of Santa Ana* v. *Kelly*, 932 F. Supp. 1284, 1292 (D.N.M. 1996), aff'd, 104 F.3d 1546 (10th Cir. 1997) (noting that "conjunctive terms indicate that all requirements must be satisfied") (citing *United States v. O'Driscoll*, 761 F.2d 589, 597–98 (10th Cir. 1985)) (subsequent citations omitted); *Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 236 (2011) (stating that "linking independent ideas is the job of a coordinating junction like 'and'").

The language of 18 U.S.C. § 3142(f) also supports the above conclusion. Section (f) states, "[t]he judicial officer shall hold a hearing to determine whether any condition or combination of conditions set forth in subsection (c) of this section will reasonably assure the appearance of such

8

person as required **and** the safety of any other person and the community." 18 U.S.C. § 3142(f) (emphasis added). The structure of subsection (f) indicates that Congress's aim was not to constrain the basis for detention to the grounds asserted for holding a detention hearing. No matter if the court's reason for ordering a detention hearing is grounded in §§ (f)(1) **or** (f)(2), the court's determination of whether detention is appropriate must be founded on the defendant's risk of flight and/or the danger the defendant poses to the community. The foundation for holding a detention hearing is an either/or choice— (f)(1) or (f)(2). Per the structure of the statute, however, there is no choice when it comes to determining if detention is appropriate— the conclusion is based on risk of flight and danger to the community. Put more simply, even if a detention hearing is predicated only on risk of flight, the detention decision must be based on a consideration of both risk of flight and danger to community.

Defendant cites several cases to support the foregoing arguments, but the Court does not find these non-binding, out-of-circuit cases persuasive. First, the Court does not find *Himler* and *Ploof* to apply because our magistrate judge's basis for holding a detention hearing was firmly rooted within 3142(f)(2)(A), and he considered a multitude of facts which indicated that flight was not just possible, but likely to occur.[5] *See United States v. Himler*, 797 F.2d 156, 157–58 (3d Cir. 1986) (reversing the district court because the basis for detention was fear he would continue to use false identities to engage in fraud); *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir. 1988) (finding the district court's reasoning to be an inadequate basis because no § 3142(f) conditions for holding a detention hearing existed). The Court also finds *Twine* and *Byrd* inapposite, because

---

[5] The magistrate judge based his finding that there was a serious risk of flight on various facts, including: "the charged offense involved a conspiracy with a human smuggling operation based in a foreign country, [and] the charged offense occurred in the immediate proximity to the international border with Mexico, the individuals with whom Defendant was arrested were citizens of a foreign country illegally present in the United States, and Defendant attempted to deceive the Border Patrol agent during the course of the agent's investigation of the illegal entry of the individuals Defendant allegedly intended to transport." (Doc. 21-1 at 1, 2.)

our magistrate judge did not base detention solely on a finding of dangerousness. Here, the magistrate judge not only found Defendant to be dangerous, but also found him to be "a risk of nonappearance based upon his previous failure to comply with conditions of release from his state conviction." (Doc. 12-1 at 2.) *See United States v. Twine*, 344 F.3d 987, 987 (9th Cir. 2003) (finding that the Bail Reform Act does not authorizes pretrial detention based solely on a finding of dangerousness); *United States v. Byrd*, 969 F.2d 106, 110 (5th Cir. 1992) (stating that a defendant cannot be detained on the basis of danger to society alone). Accordingly, the Court finds the case law cited by Defendant unconvincing.

The Court must now determine if the magistrate judge's decision to detain Defendant adheres to the standard laid out above. Reviewing the magistrate judge's detention order *de novo* and considering the alleged facts in the Criminal Complaint and Pretrial Services Report, the Court concludes that Defendant is both a flight risk and a danger to the community.

To determine if conditions exist to support Defendant's pretrial release, the Court considers the factors laid out in § 3142(g). Though the Defendant meets some of the criteria outlined in § 3142(g)(3)(A),[6] the Court finds that no combination of conditions could reasonably assure the safety of others for several reasons. First, given the nature and circumstances of the offense charged, the Court expresses concern with Defendant's attempt to deceive the federal agents about his multinational criminal activity. *See* 18 U.S.C. § 3142(g)(1). Second, the evidence against Defendant is strong, since Border Patrol agents witnessed the events described in the Criminal Complaint and Defendant admitted to his involvement in transporting undocumented aliens. *See id.* § 3142(g)(2). Third, and most importantly, Defendant's criminal history includes Criminal

---

[6] The Pretrial Services Report notes that Defendant is a United States citizen living in the Sunland Park/El Paso area, has a common-law wife, and was employed at the time of his arrest. (*See* Doc. 5 at 2.)

Sexual Penetration of a Child. *See id.* § 3142(g)(3). Specifically, Defendant raped his 6-year-old niece on several occasions, and then told her "that he 'liked' her a lot and for her to not tell anyone about the sexual incidents, as it [was] their secret." (Doc. 5 at 6.) Because of this crime, Defendant was sentenced to more than 24 years in custody. (*Id*. at 5.) Sometime prior to July 21, 2015, Defendant was released on parole, but "[D]efendant's supervision was revoked [because] he had contact with a child that was under the age 18; used alcohol; and was found to be playing online games with children." (Doc. 5 at 6.) The details associated with the revocation are highly concerning as well, in that officers found Defendant alone in his home with three young children locked in a bathroom. (*Id.* at 6) The officers then found what appeared to be children's clothing in Defendant's bedroom. (*Id*.) These actions caused Defendant's conditions to be revoked, and he was sentenced to nine years in custody. (*Id*.) However, he was released in October 2017. (*Id*.) Fourth, the Court determines Defendant to be a serious risk of danger to any person or the community if released. The Court finds that Defendant's original crime, and subsequent violation of release, show a refusal or inability to stay away from children even when ordered to do so by a court. Because of this, the Court finds Defendant to still be a threat to children. This causes the Court serious concern since Defendant has daily, unsupervised contact with the three children found in his house in July 2015. These are the same children found locked in Defendant's bathroom, and these are the same children whose clothing appeared to be scattered throughout the Defendant's bedroom. This concerning circumstance persuades the Court that Defendant is still a danger to these children and the community. Therefore, the Court finds that no combination of conditions would reasonably assure their safety. The Court affirms the magistrate judge's determination that detention was warranted.

12

**IT IS ORDERED** that the Appeal from Order of Detention (Doc. 17.) is denied and Defendant will remain in detention pending resolution of the charges against him.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE